# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

Robert Cevasco, on behalf of the Allegiant 401(k) Retirement Plan, individually and on behalf of all others similarly situated,

    Plaintiff

v.

Allegiant Travel Company

    Defendant

Case No.: 2:22-cv-01741-JAD-DJA

**Order Granting Motion for Leave to File Notice of Supplemental Authority and Denying Motion for Partial Dismissal**

[ECF Nos. 45, 50]

On behalf of himself and the Allegiant 401(k) Retirement Plan and a proposed class of similarly situated plan participants, Robert Cevasco brings this action against Allegiant Travel Company alleging violations of the Employment Retirement Income Security Act (ERISA).[1] According to Cevasco, Allegiant imprudently offered the Fidelity Freedom Fund Class K share class, designated this share class as the Plan's Qualified Default Investment Alternative (QDIA), and permitted Fidelity Investments Institutional to collect excessive recordkeeping fees in violation of duties of fiduciary prudence that Allegiant owed to the Plan and its participants.[2]

Allegiant now moves to dismiss Cevasco's breach-of-fiduciary-prudence claim to the extent that it is based on theories of liability involving Allegiant's allegedly imprudent offering of the Freedom Class K funds and designating them as the Plan's QDIA. It contends that Cevasco never invested in these funds and thus lacks standing to pursue any related claims.[3] Cevasco concedes that he did not invest in these funds but argues that he nevertheless has

---

[1] ECF No. 1.

[2] *Id.*

[3] ECF No. 45.

standing to challenge them on behalf of unnamed plaintiffs based on his allegations of excessive recordkeeping fees that affect all Plan participants.[4] Separately, Allegiant moves for leave to file supplemental authority—two district court decisions from outside this circuit decided after the motion to dismiss was fully briefed—in support of its motion to dismiss.[5] I grant the motion to supplement, and I take Allegiant's new authority into consideration. But because Allegiant has not contested Cevasco's standing as to his recordkeeping-fees theory, and the Ninth Circuit's decision in *Melendres v. Arpaio* establishes that this is sufficient for Cevasco's claims to survive a standing challenge, I deny Allegiant's motion to dismiss.

## Background[6]

This case concerns Allegiant's management of the Allegiant 401(k) Retirement Plan.[7] Cevasco is a current plan participant and former Allegiant employee.[8] The Plan, first established in 2000, is a defined-contribution plan that permits participants to contribute portions of their pre-tax annual compensation and direct their contributions into various investment options.[9] Fidelity Management Trust Company serves as the trustee over the Plan and its master trust.[10] Fidelity Investments Institutional is the Plan's recordkeeper, a role it has held since 2011.[11]

---

[4] ECF No. 46.

[5] ECF No. 50. Cevasco opposes the motion, arguing that these decisions are neither binding nor persuasive. ECF No. 51. I grant Allegiant's motion for leave to file notice of supplemental authority as I have reviewed these decisions and neither changes my analysis or the result here.

[6] These facts are summarized from the plaintiffs' complaint and are not to be construed as findings of fact.

[7] *See generally* ECF No. 1.

[8] *Id.* at ¶¶ 9, 19.

[9] *Id.* at ¶ 36, 114.

[10] *Id.* at ¶ 38.

[11] *Id.* at ¶¶ 39, 81.

Cevasco brings two causes of action: a failure-to-monitor claim[12] and a breach-of-fiduciary-prudence claim with three underlying theories of liability.[13]  Cevasco's first theory is that Allegiant breached its fiduciary duties by failing to control the Plan's recordkeeping and administrative expenses; Cevasco contends that these fees impact all plan participants and are excessive in comparison to other plans of similar size.[14]  Fidelity received direct recordkeeping compensation from plan participants that was more than two times more per participant than plans of similar size pay their record keepers.[15]  And this does not take into account the expenses paid to Fidelity indirectly via revenue sharing, an asset-based form of payment[16] that, according to Cevasco, has "exploded" over the past ten years as the Plan's total assets have grown over ten times in size.[17]

Cevasco's second theory is that it was imprudent to offer a particular share class of mutual funds—Fidelity Freedom Fund Class K—when a lower-cost share class of identical funds could have been offered in its stead.[18]  And his third theory of liability centers on the Plan designating the Freedom Class K funds as its QDIA, which means that plan participants'

---

[12] *Id.* at ¶¶ 132–38.  Allegiant does not directly address this claim in its motion, *see* ECF No. 45, though it appears that it will rise or fall with of the breach-of-fiduciary-prudence claim.  *See Davis v. Salesforce.com, Inc.*, 2022 WL 1055557, at *2 (9th Cir. Apr. 8, 2022).

[13] ECF No. 1 at ¶¶ 130–34.  To avoid confusion, I note that Cevasco's complaint paragraphs are misnumbered and that there are two paragraphs each labeled 132, 133, and 134, all appearing within pages 37–39 of the complaint.  The citation here refers to the first set, and the citation above refers to the second set.

[14] *Id.* at ¶¶ 61–107.  According to Cevasco, "[t]he cost of providing recordkeeping services primarily depends on the number of participants in a plan, rather than the range of services provided to the plan."  *Id.* at ¶ 65.

[15] *Id.* at ¶¶ 86–87.

[16] *Id.* at ¶¶ 65–69, 86–87.

[17] *Id.* at ¶ 77.

[18] *Id.* at ¶¶ 108–16.

3

contributions are automatically directed into these funds unless they route their contributions elsewhere.[19] These "actively managed" funds are, according to Cevasco, "riskier, more expensive, and [] consistently outperformed" by passively managed Fidelity Freedom Index Funds, making them an imprudent choice for the Plan's QDIA.[20]

## Discussion

Federal Rule of Civil Procedure (FRCP) 12(b)(1) authorizes federal courts to dismiss a complaint for want of subject-matter jurisdiction.[21] An FRCP 12(b)(1) challenge may be either factual (contesting the truth of the complaint's allegations) or facial (contesting the sufficiency of the complaint's allegations to invoke federal jurisdiction).[22] In resolving a facial attack, the court takes all well-pled facts in the complaint as true[23] because "the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction."[24] But "in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction."[25]

Allegiant mounts both facial and factual attacks on subject matter jurisdiction. "In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment."[26]

---

[19] *Id.* at ¶¶ 117–29.
[20] *Id.* at ¶¶ 119–23.
[21] Fed. R. Civ. P. 12(b)(1).
[22] *Edison v. United States*, 822 F.3d 510, 517 (9th Cir. 2016); *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).
[23] *Safe Air*, 373 F.3d at 1039.
[24] *Id.*
[25] *Id.*
[26] *Id.*

4

The court also "need not presume the truthfulness of the plaintiff's allegations."[27]  When the moving party has successfully "converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject[-]matter jurisdiction."[28]

**I.     Cevasco concedes that he has not invested in the Freedom Class K funds.**

Federal courts are courts of limited jurisdiction, possessing "only that power authorized by Constitution and statute."[29]  The party asserting federal jurisdiction has the burden of establishing all its requirements, including Article III standing.[30]  The "irreducible constitutional minimum" of Article III standing requires that the plaintiff show (i) "an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief."[31]

Allegiant's motion pertains to the first standing requirement—injury in fact.  Allegiant asserts that Cevasco failed to allege that he invested in any Freedom Class K funds or that his own Plan investments were directed to this share class when it was the Plan's QDIA.[32]  So Cevasco's individual-plan account, Allegiant contends, couldn't have been injured by Allegiant's

---

[27] *Id.*

[28] *Id.* (internal quotation omitted).

[29] *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (cleaned up).

[30] *Id.*; *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004), *abrogated in part on other grounds in Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127 (2014).

[31] *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up); *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021).

[32] ECF No. 45 at 7.

purportedly imprudent decisions to offer this share class and designate it as the Plan's QDIA,[33] which are two of the three theories of liability alleged in support of Cevasco's claim for breach of fiduciary prudence.[34] And in support its factual attack on jurisdiction, Allegiant submits copies of Cevasco's account statements,[35] which it argues "show two things: (1) [Cevasco] did not invest in the Freedom Class K [funds]; and (2) [Cevasco's] investments were never directed to any QDIA."[36]

Cevasco responds that he has standing based on his recordkeeping-fees theory and cites cases that purportedly hold that a named plaintiff can proceed on behalf of a plan or unnamed putative class members "even if the relief sought sweeps beyond his or her injury."[37] But Cevasco doesn't directly dispute Allegiant's narrower points that he did not own any Freedom Class K funds or have any of his plan assets routed to a QDIA.[38] The complaint contains no information suggesting that he personally invested in any of the challenged funds.[39] Cevasco's account statements also do not indicate that he owned any Freedom Class K funds,[40] and he did not submit evidence that contradicts the information contained in the account statements attached to Allegiant's motion. So Cevasco has not demonstrated that he has suffered an injury to his individual plan under the two theories of liability involving the Freedom Class K funds.[41]

---

[33] *Id.* at 10.
[34] ECF No. 1 at ¶132.
[35] ECF No. 45-2.
[36] ECF No. 45 at 10.
[37] ECF No. 46 at 10–12.
[38] *See generally* ECF No. 46
[39] ECF No. 1.
[40] ECF No. 46-2.
[41] *See Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014); *see also In re Sutter Health ERISA Litig.*, 2023 WL 1868865, at *6 (E.D. Cal. Feb. 9, 2023).

**II.  Dismissal is inappropriate here in light of the "class certification" approach adopted by the Ninth Circuit in *Melendres*.**

Despite Cevasco's inability to establish standing related to the Freedom Class K funds, dismissal is not warranted. In *Melendres v. Arpaio*, the Ninth Circuit adopted the "class certification" approach to this issue, which "holds that once the named plaintiff demonstrates her individual standing to bring a claim, the standing inquiry is concluded, and the court proceeds to consider whether Rule 23(a) prerequisites for class certification have been met."[42] "Under the class certification approach, therefore, 'any issues regarding the relationship between the class representative and the passive class members—such as dissimilarity in injuries suffered—are relevant only to class certification, not to standing.'"[43] In other words, "[r]epresentative parties who have a direct and substantial interest have standing; the question whether they may be allowed to present claims on behalf of others who have similar, but not identical, interests depends not on standing, but on an assessment of typicality and adequacy of representation."[44]

The facts in *Melendres* provide clarity as to how courts should apply it. The plaintiffs had alleged that they were victims of racial profiling resulting in stops during police "saturation patrols,"[45] and they claimed that these practices violated the Fourth and Fourteenth Amendments.[46] They also sought to represent unnamed plaintiffs who were stopped outside of the saturation-patrol context (though none of the named plaintiffs had been individually injured

---

[42] *Melendres v. Arpaio*, 784 F.3d 1254, 1262 (9th Cir. 2015) (quoting 1 William B. Rubenstein, Newberg on Class Actions § 2:6 (5th ed.)).

[43] *Id.* (quoting 1 William B. Rubenstein, Newberg on Class Actions § 2:6 (5th ed.)).

[44] *Id.* (alteration in original) (quoting 7AA Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure §1785.1 (3d ed.)).

[45] *Id.* at 1258 (citing *Melendres v. Arpaio*, 695 F.3d 990, 994 (9th Cir. 2012)).

[46] *Id.* at 1261.

by such stops), and the defendants argued that they lacked standing to do so.[47] The Ninth Circuit disagreed, observing that the defendants' argument "conflate[d] standing with class certification."[48] So the Ninth Circuit was faced with claims that were brought under the same laws, like Cevasco's allegations that fall under ERISA's statutorily established duty of fiduciary prudence,[49] but there were differences in the complained-of conduct impacting the named and unnamed plaintiffs in *Melendres*, like there appear to be here. The Ninth Circuit acknowledged these differences yet clarified that analyzing the "disjuncture between the claims of named plaintiffs and those of absent class members" should be performed at the class-certification stage rather than as part of a standing inquiry.[50]

Allegiant does not challenge Cevasco's individual standing to bring a claim for excessive recordkeeping fees affecting *all* plan participants.[51] So Cevasco's individual standing to bring an ERISA claim for breach of fiduciary prudence under at least one theory of liability is uncontested. *Melendres* establishes that the standing inquiry in the class-action context ends there—any comparative analysis between the theories of liability or claims applicable to Cevasco individually and those applicable to the unnamed plaintiffs should be performed when evaluating adequacy and typicality as part of a future class-certification motion.

---

[47] *Id.*

[48] *Id.*

[49] 29 U.S.C. § 1104(a).

[50] *Melendres*, 784 F.3d at 1261.

[51] ECF No. 45 at 4; *see also In re Sutter Health*, 2023 WL 1868865, at *5 (collecting cases) (observing that "courts have found that plaintiffs bringing claims regarding underperforming funds can demonstrate the requisite injury where they either (i) invested in at least one of the challenged funds or (ii) challenge a 'plan-wide' decision-making process that injures all plan participants").

The district court in *In re Sutter Health ERISA Litigation* was faced with facts that mirror those here and came to the same conclusion.[52] Like Cevasco, the plaintiffs in *In re Sutter Health* advanced differing theories of liability for breach-of-fiduciary-duty claims: "offering imprudent and unperforming investments" and "excessive management fees and total plan cost."[53] The court similarly found that the plaintiffs had not demonstrated standing for the former because the complaint "appear[ed] to complain about the performance of specific funds" but "contain[ed] no details as to the Plaintiffs' specific investments."[54] But they had for the latter because "the fees challenged were charged to all Plan participants."[55] The court denied the motion to dismiss for lack of standing in its entirety since the plaintiffs had "sufficiently allege[d] that, "at the very least, all Plan participants were harmed by excessive recordkeeping fees."[56] And it also relied on *Melendres*, noting that "whether the named Plaintiffs may ultimately bring ERISA claims in a representative capacity on behalf of all Plan participants[] is a question of class certification . . . rather than standing."[57]

Allegiant offers various arguments and cases in support of the opposite result, but they are all unpersuasive. It attempts, for example, to distinguish *In re Sutter Health* and a number of other cases Cevasco cites on the grounds that they involved facial, rather than factual, attacks to standing.[58] But that difference is irrelevant because the facts Allegiant has challenged

---

[52] *In re Sutter Health*, 2023 WL 1868865, at *5–7.

[53] *Id.* at *6.

[54] *Id.*

[55] *Id.*

[56] *Id.*

[57] *Id.* at *7 (citing *Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*, 250 F. Supp. 3d 460, 465 (N.D. Cal. 2017), which relied on *Melendres*).

[58] ECF No. 47 at 5–6.

9

(Cevasco's lack of personal investment in Freedom Class K funds) do not control the result here, and Allegiant does not contest the facts that do and that were also dispositive in *In re Sutter Health* (allegations of plan-wide excessive administrative and recordkeeping fees).[59]

Allegiant also cites to a number of district court cases that it claims support its broader position that a named plaintiff must be personally invested in a challenged fund for any claim or theory of liability related to that fund to survive a standing inquiry.[60] But these cases are all materially distinguishable for a variety of reasons. Some dealt with situations in which the named plaintiff had alleged no personal injury at all under ERISA.[61] Yet Allegiant does not contest Cevasco's standing to bring a claim for breach of fiduciary prudence for excessive recordkeeping fees, so these cases provide little guidance here. Allegiant also relies on cases from circuits that have adopted the stricter "class standing" approach to this issue, and a number of these decisions directly cite to and follow this precedent from their circuits.[62] To satisfy the more intensive "standing approach," a plaintiff must "plausibly allege[] (1) that he personally has suffered some actual . . . injury as a result of the putatively illegal conduct of the defendant, and

---

[59] *In re Sutter Health*, 2023 WL 1868865, at *6–7.

[60] *See* ECF No. 45; ECF No. 47.

[61] *E.g.*, *Thole v. U. S. Bank N.A*, 140 S. Ct. 1615, 1619–22 (2020); *Winsor v. Sequoia Benefits & Ins. Servs.*, LLC, 62 F.4th 517, 529 (9th Cir. 2023); *Davis on behalf of Old Dominion 401(k) Ret. Plan v. Old Dominion Freight Line, Inc.*, 2023 WL 5751524, at *6 (M.D.N.C. Sept. 6, 2023); *Beldock v. Microsoft Corp.*, 2023 WL 1798171, at *4 (W.D. Wash. Feb. 7, 2023); *Nikouardestani v. Prudential Ins. Co. of Am.*, 2022 WL 1840345, at *3 (C.D. Cal. May 3, 2022).

[62] *E.g., McCaffree Fin. Corp. v. ADP, Inc.*, 2023 WL 2728787, at *7 (D.N.J. Mar. 31, 2023) (citing *Boley v. Universal Health Servs., Inc.*, 36 F.4th 124, 131 (3d Cir. 2022)); *Patterson v. Morgan Stanley*, 2019 WL 4934834, at *6 (S.D.N.Y. Oct. 7, 2019) (citing *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 162 (2d Cir. 2012)); *Dezelan v. Voya Ret. Ins. & Annuity Co.*, 2017 WL 2909714, at *7–8 (D. Conn. July 6, 2017) (applying *NECA-IBEW*); *see also Angell v. GEICO Advantage Ins. Co.*, 67 F.4th 727, 733 (5th Cir. 2023) (discussing the current circuit split on the "class standing" and "class certification" approaches, observing that the Second Circuit and Third Circuit follow the "more intensive 'standing approach'" and listing *NECA-IBEW* and *Boley* as examples).

(2) that such conduct implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class by the same defendants."[63] But the Ninth Circuit explicitly rejected the "class standing" approach in favor of the "class certification" approach in *Melendres*.[64] And district courts that have applied *Melendres* in the ERISA context have consistently found that claims should not be dismissed for want of standing simply because named plaintiffs were challenging funds that they had not personally invested in.[65]

Both parties also discuss *In re LinkedIn ERISA Litigation*[66] in their briefing,[67] but this decision doesn't offer much guidance on this point. The *In re LinkedIn* court did dismiss the complaint in its entirety for lack of standing, and the plaintiffs there had not alleged that they personally invested in the specific funds they were challenging.[68] But the court also found the that plaintiffs had not adequately alleged injury under the second of the their "two main theories

---

[63] *NECA-IBEW*, 693 F.3d at 162 (cleaned up).

[64] *See Melendres*, 784 F.3d at 1261–62 (rejecting the stricter "standing approach," which "treats dissimilarities between the claims of named and unnamed plaintiffs as affecting the 'standing' of the named plaintiff to represent the class").

[65] *E.g.*, *In re Sutter Health ERISA Litig.*, 2023 WL 1868865, *5–7; *Tobias v. NVIDIA Corp.*, 2021 WL 4148706, at *7 (N.D. Cal. Sept. 13, 2021) (noting that "[t]he Ninth Circuit provided guidance on how to resolve issues of this kind in *Melendres v. Arpaio*" and denying motion to dismiss claims to the extent they were based on funds the named plaintiffs had not personally invested in); *Bouvy v. Analog Devices, Inc.*, 2020 WL 3448385, at *7 (S.D. Cal. June 24, 2020) (same); *Johnson v. Providence Health & Servs.*, 2018 WL 1427421, at *6–7 (W.D. Wash. Mar. 22, 2018) (same); *Johnson*, 250 F. Supp. 3d at 465 (same). Allegiant also cites to *Marshall v. Northrop Grumman Corp.*, 2017 WL 2930839, at *7–9 (C.D. Cal. Jan. 30, 2017), where the district found that the named plaintiffs lacked standing to bring claims related to funds that they had not personally invested in. But the *Marshall* court appeared to apply a more individualized standing analysis and did not consider or apply *Melendres*'s class-certification approach to this issue, so I do not find *Marshall* to be persuasive.

[66] *In re LinkedIn ERISA Litig.,* 2021 WL 5331448 (N.D. Cal. Nov. 16, 2021).

[67] ECF No. 45 at 7–10; ECF No. 46 at 12–13; ECF No. 47 at 7–8.

[68] *In re LinkedIn,* 2021 WL 5331448, at *4.

11

of liability" involving plan-wide, excessive recordkeeping fees either.[69]  And though Cevasco and Allegiant both read this decision as plainly supporting their competing positions, it is unclear if (or to what extent) the court would have dismissed the plaintiffs' claims had they been able to adequately allege an injury under their second theory.[70]  The *In re LinkedIn* court also did not consider or apply *Melendres*—but then again, it didn't need to since the plaintiffs failed to adequately allege an injury for any ERISA theory of liability.

While I do find that Cevasco's breach-of-fiduciary-duty theories of liability should not be dismissed for lack of standing, my determination here "does not automatically establish that [Cevasco] is entitled to litigate the interests of the class []he seeks to represent."[71]  Allegiant will have its opportunity to challenge whether Cevasco is an adequate class representative to "bring ERISA claims in a representative capacity on behalf of all Plan participants" at the class certification stage.[72]

**Conclusion**

IT IS THEREFORE ORDERED that Allegiant's motion for partial dismissal **[ECF No. 45] is DENIED.**

IT IS FURTHER ORDERED that Allegiant's motion for leave to file notice of supplemental authority **[ECF No. 50] is GRANTED.**

_____
U.S. District Judge Jennifer A. Dorsey
October 4, 2023

---

[69] *Id.*

[70] *Id.*

[71] *Sosna v. Iowa*, 419 U.S. 393, 403 (1975).

[72] *In re Sutter Health*, 2023 WL 1868865, at *7 (citing *Johnson*, 250 F. Supp. 3d at 465).