Michael Kind, Esq. (NV Bar No. 13903)
**KIND LAW**
8860 S. Maryland Parkway, Suite 106
Las Vegas, Nevada 89123
Telephone: (702) 337-2322
Email: mk@kindlaw.com
*Plaintiffs' Local Counsel*

Michael McKay, Esq. (*Pro hac Vice*)
**MCKAY LAW, LLC**
5635 N. Scottsdale Road, Suite 170
Scottsdale, Arizona 85250
Telephone: (480) 681-7000
Email: mmckay@mckaylaw.us
*Class Counsel*

[Additional Counsel Identified Below]

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| ROBERT CEVASCO; JACK JONES; PATRICK JACKSON; and PAUL RADVANSKY, on behalf of the Allegiant 401(k) Retirement Plan, | Case No.: 2:22-cv-01741-JAD-DJA |
| Plaintiffs, | **PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND AWARD OF ATTORNEYS' FEES, EXPENSES, AND CLASS CONTRIBUTION AWARDS** |
| vs. | |
| ALLEGIANT TRAVEL COMPANY, | |
| Defendant. | |

# **TABLE OF CONTENTS**

MOTION ..................................................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................... 1

I.    INTRODUCTION ............................................................................................ 1

II.   BACKGROUND FACTS ................................................................................ 2

    A.    The Settlement ...................................................................................... 3

          1.    The Settlement ............................................................................ 3

          2.    Catalyst For Plan Improvements ................................................ 3

          3.    Distribution of Funds to Class Members .................................. 3

          4.    Release ........................................................................................ 4

    B.    Class Notice .......................................................................................... 4

    C.    The Settlement Will Be Reviewed and Authorized by an Independent
         Fiduciary on Behalf of the Plan ......................................................... 5

III.  THE SETTLEMENT MERITS FINAL APPROVAL ..................................... 5

    A.    The Settlement is Fair, Reasonable, and Adequate ........................ 5

          1.    The Strength of Plaintiffs' Case and the Risk, Expense, and
              Complexity of Further Litigation ............................................... 7

          2.    The Settlement Recovery ............................................................ 8

          3.    The Stage of Proceedings and Extent of Discovery Completed ............ 8

          4.    The Experience and Views of Class Counsel ........................... 9

          5.    The Reaction of Class Members ................................................ 9

          6.    Presence of a Governmental Participant .................................. 10

    B.    The *Bluetooth* Factors Are Satisfied ............................................... 10

IV.  PLAINTIFFS' REQUEST FOR ATTORENYS' FEES, EXPENSES, AND
      CASE CONTRIBUTION AWARDS IS FAIR, REASONABLE, AND
      APPROPRIATE ............................................................................................ 10

          1.    The Results Achieved ............................................................... 11

          2.    The Risk of Litigation .............................................................. 12

3.    The Skill Required and Quality of Representation .............................. 14

4.    The Contingent Nature of the Fee and Financial Burden Carried
      by Plaintiffs ...................................................................................... 15

5.    Awards in Similar Cases ..................................................................... 16

6.    Lodestar Cross Check .......................................................................... 17

7.    The Court Should Award Reasonable Expenses to Plaintiffs ............. 20

8.    The Court Should Award Case Contribution Awards ......................... 21

V.    CONCLUSION ................................................................................................ 22

## MOTION

Robert Cevasco, Jack Jones, Patrick Johnson, and Paul Radvansky (collectively, "Plaintiffs") respectfully move the Court to grant Plaintiffs' Motion for Final Approval of Class Action Settlement, Attorneys' Fees, Expenses, and Class Contribution Awards (the "Motion"). Plaintiffs bring this Motion pursuant to Federal Rule of Civil Procedure 23(e) and (h), and it is supported by the below Memorandum of Points and Authorities; the Declaration of Michael C. McKay ("McKay Decl."); Declaration of American Legal Claim Services, LLC ("American Legal"); the pleadings; records; papers on file in this action; and all other matters properly before the Court. Plaintiffs stand ready to provide any additional information or materials that the Court may require in connection with its consideration of the Motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

On January 6, 2025, the Court preliminarily approved the Settlement and certified the following Settlement Class:

> All persons who were participants or beneficiaries of the Plan at any time during the Class Period.

(Order Granting Preliminary Approval, ECF No. 86.) The "Class Period" was defined as October 17, 2016 to January 6, 2025. (*Id.*) In granting preliminary approval of the Settlement, the Court found:

> (a) the proposed Settlement resulted from arm's-length negotiations; (b) the Settlement Agreement was executed only after Class Counsel had researched and investigated multiple legal and factual issues pertaining to Plaintiffs' claims; (c) there is a genuine controversy between the Parties involving Defendant's compliance with the fiduciary requirements of ERISA; (d) the Settlement appears on its face to be fair, reasonable, and adequate; and (e) the Settlement evidenced by the Settlement Agreement is sufficiently fair, reasonable, and adequate to warrant sending notice of the Action and the Settlement to the Settlement Class.

(*Id.* at * 4.) Nothing has changed that would alter in a negative manner the Court's preliminary approval findings. The opposite is true. All of the factual developments since the Court made the findings above demonstrate the Court's preliminary approval findings are well-reasoned and the Settlement merits final approval for the same reasons.

Notice of the Settlement was sent to Class Members exactly as instructed by the Court. There have been **no objections** to any aspect of the Settlement following Notice. (McKay Decl. ¶ 14.) Class counsel have fielded telephone calls from hundreds of Settlement Class Members inquiring about the Settlement. (*Id.*) All Class Members with whom Class Counsel have spoken were pleased with the Settlement and provided positive feedback. (*Id.*)

In addition, consistent with Department of Labor regulations pertaining to the release of claims by a qualified retirement plan (like the Plan here), an Independent Fiduciary has been retained on behalf of the Plan to review and authorize the Settlement as required by United States Department of Labor, 68 Fed. Reg. 75,632, as amended ("PTE 2003-39"). (McKay Decl. ¶ 17.) The Independent Fiduciary's report will be filed before the Final Fairness Hearing. (*Id.*) It will provide an additional touchstone for the Court to confirm the fairness and adequacy of the Settlement and the related applications.

All facts support final approval of the Settlement. Plaintiffs respectfully request the Court to grant final approval of the Settlement.

## II.    BACKGROUND FACTS

The basic facts and procedural history of this action are well known to the Court and set forth in greater detail in Plaintiffs' Motion for Preliminary Approval. (*See* ECF No. 80.)

### A.    The Settlement

#### 1.    The Settlement

Class Counsel, with the assistance of industry experts, estimate the range of realistic and supportable Plan losses to be approximately $3,000,000, depending upon the methodology and assumptions employed. (McKay Decl. ¶ 4.) The Settlement provides an

immediate cash payment of $1,700,000, or about 56% of estimated supportable Plan losses.

### 2. Catalyst For Plan Improvements

In addition, Plaintiffs' Complaint served as a catalyst for massive improvements to the administration of the Plan. To be sure, Plaintiffs' Complaint alleged Defendant caused a number of high-cost and poorly performing investment options to be offered on the Plan's investment menu. After Plaintiffs filed their Complaint, Defendant removed the high-cost and poorly performing investment options from the Plan's investment menu and replaced them with prudent ones. (*See* First Amended Class Action Complaint, ¶ 14 (discussing changes to the Plan after the original Complaint was filed), ECF No. 69.) These improvements will add millions of dollars to the Plan and Plan participants' retirement savings going forward. The Settlement does not recognize the catalyst for improvements and value obtained by Plaintiffs for the Plan because of this lawsuit, but the Court should be aware of the substantial value added at this stage of the proceeding.

### 3. Distribution of Settlement Funds to Class Members

The Settlement proceeds will be distributed on a *pro rata* basis to Settlement Class Members pursuant to the proposed Plan of Allocation. (Proposed Plan of Allocation, ECF No. 80-1 at *49.) The amount paid to each Class Member will be determined by the Plan of Allocation based on the average size of each Class Member's account during the Class Period. (*Id.*) Settlement Class Members who have active Plan accounts need not take any further action to receive payment under the Settlement, as their individual Plan accounts will automatically be credited with the amount due to them under the Plan of Allocation. (*See* Settlement Agreement, ¶ 5.3, ECF No. 80-1 at *21.) For Class Members who no longer have active individual Plan accounts, they will receive checks. (*Id.*) But all Class Members will automatically receive the benefit of the Agreement without having to submit any claim for benefits. (*Id.*)

None of the Settlement proceeds shall revert back to Defendant. (*Id.*) To the extent the checks mailed to Settlement Class members are undelivered or are not cashed before

their expiration date, those funds shall be paid to the Plan for the purpose of defraying Plan expenses. (*Id.*)

### 4.    Release

The release of claims provided in the Settlement is tailored to the claims pursued in this action and for which consideration would be furnished under the Settlement. (*Id.* at *16.) The release will be scrutinized by the Independent Fiduciary as well and the Independent Fiduciary will opine on whether the release here is consistent with releases approved by courts in similar ERISA settlements.

### B.    Class Notice

In compliance with the Preliminary Approval Order, the Settlement Administrator, American Legal, disseminated the Settlement Notice via electronic and/or first-class mail to more than 7,816 Class Members. (American Legal Decl., at ¶¶ 4-7.) The Settlement Administrator obtained forwarding addresses and updated contact information through the United States Post Office and "skip-tracing." (*Id.* ¶ 6.) It re-mailed Notices to each individual for whom an updated address was discovered after the original Notice had been returned. (*Id.*) The Settlement Administrator was able to confirm that the Notice was delivered to 98.21% of Class Members. (*Id.* ¶ 7.)

Additionally, pursuant to the Preliminary Approval Order and the terms of the Settlement, the Settlement Administrator established a website, which provides information about the case, relevant deadlines, and makes available a number of pertinent documents, including the: (i) Class Action Complaint; (ii) Settlement Agreement; (iii) Motion for Preliminary Approval; (iv) and Class Notice. The website also has a frequently asked questions section and a platform for Class Members to update their contact information. (*See* www.allegianterisasettlement.com). Further, in accordance with the Settlement and the Preliminary Approval Order, the Settlement Administrator established a toll-free telephone number, to which Class Members could direct questions about the Settlement. (American Legal Decl., at ¶ 10.) In addition to the foregoing, the Settlement Administrator

distributed the Notice of Settlement to the appropriate federal and state officials pursuant to the Class Action Fairness Act of 2005. (*Id.* at ¶ 3.) And the Settlement Administrator has provided periodic updates to Class Counsel of expenditures made in connection with administration of the Settlement, and it has provided any and all information that was requested by the parties or their counsel.

Finally, neither Class Counsel nor the Settlement Administrator have received any objections to the Settlement or to the requested attorneys' fees, costs, or case contribution awards. (American Legal Decl., at ¶ 8, *see also* McKay Decl., at ¶ 14.)

### C. The Settlement Will Be Reviewed and Authorized by an Independent Fiduciary on Behalf of the Plan

To further ensure that the Settlement is fair, reasonable, and adequate, an Independent Fiduciary, Fiduciary Counselor's, Inc., as retained to review, and if appropriate, approve the Settlement on behalf of the Plan pursuant to Department of Labor Regulations pertaining to the release of litigation claims on behalf of a qualified retirement plan. (Settlement at *13, ECF No. 80-1.)

The parties and their counsel provided and continue to provide the Independent Fiduciary sufficient information to enable the Independent Fiduciary to review and evaluate the Settlement, including the relevant pleadings and papers filed on the docket, certain discovery materials, confidential settlement documents, and any other materials requested. (*See* McKay Decl., at ¶ 17.) In addition, counsel for the parties each have or will participate in meetings with the Independent Fiduciary to review certain matters related to the litigation and Settlement, and the parties have and will answer all follow up questions from the Independent Fiduciary. (*Id.*)

## III. THE SETTLEMENT MERITS FINAL APPROVAL

### A. The Settlement is Fair, Reasonable, and Adequate

"The standard for reviewing class action settlements at the final approval stage is well settled. Rules 23(e)(2) states that the district court may only approve the settlement if 'it is fair, reasonable, and adequate.'" *Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030, 1035 (N.D. Cal.

2016) (citing Fed. R. Civ. P. 23). In determining whether a settlement meets these requirements, courts in the Ninth Circuit look to factors including the following:

> (1) the strength of plaintiffs' case;
>
> (2) the risk, expense, complexity, and likely duration of further litigation;
>
> (3) the risk of maintaining class action status throughout the trial;
>
> (4) the amount offered in settlement;
>
> (5) the extent of discovery completed, and the stage of the proceedings;
>
> (6) the experience and views of counsel;
>
> (7) the presence of a governmental participant; and
>
> (8) the reaction of the class members to the proposed settlement.

*Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (citation and internal quotation marks omitted). The relative importance of these factors depends upon the unique facts and circumstances of a given case, and "[i]t is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness . . . ." *Cotter*, 193 F. Supp. 3d at 1035 (citations and alterations omitted).

It is also important to note that the Ninth Circuit has repeatedly emphasized that "there is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *see also Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1121 (9th Cir. 2020) (same).

This Court has already preliminarily found that the Settlement is fair, reasonable, and adequate. (Order Granting Preliminary Approval, ECF No. 86.) The factors considered at final approval mirror those at preliminary approval. Having already preliminarily approved the fairness of the settlement, and because there have been no intervening circumstances that would alter that conclusion, the Court should find the same here again. Moreover, the absence of any objections to the Settlement coupled with the Independent Fiduciary report are important data points the Court did not have at the preliminary approval stage, and these

data points also weigh heavily in support of the Court finding that the settlement is fair, reasonable, and adequate

>    1.    The Strength of Plaintiffs' Case and the Risk, Expense, and Complexity of Further Litigation

Although Plaintiffs believe there is strong legal and factual support for their claims, Plaintiffs also recognize that there is inherent risk in continued litigation of their complex ERISA claims. After the Court denied Defendant's motion to dismiss, a wide range of outcomes was possible, including summary judgment, challenges to expert witness testimony, and uncertain loss awards even if Plaintiffs did ultimately prevail on their claims. *Johnson v. Fujitsu Tech. and Bus. of Am., Inc.*, 2018 WL 2183253, at *5 (N.D. Cal. 2018).

The Settlement was not reached early on in this case. It was reached after nearly two years of litigation, substantial motion practice, discovery, and with the assistance of expert witnesses on both sides. Trial presentations would likely have relied heavily on competing expert witness testimony. And it is likely that even after a trial verdict was obtained, a complex appeal would have followed. Plaintiffs faced meaningful challenges in their ability to obtain a meaningful and timely recovery on behalf of the Plan absent a settlement. This fact strongly supports the final approval of the Settlement. *See Rodriguez v. W. Publ'g Corp.*, 563 F. 3d 948, 966 (9th Cir. 2009) (noting difficulties and risk in litigation weigh in favor of approving a class action settlement); *Stewart v. Applied Materials, Inc.* 2017 WL 3670711, at * 5 (N.D. Cal. Aug. 25, 2017) (Judge Tigar granting final approval of ERISA class action settlement).

The Settlement is the product of an extensive arm's-length process in recognition of the risks that attended to further litigation. "An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining." *Viceral v. Mistras Grp., Inc*., 2016 WL 5907869, at *8 (N.D. Cal. Oct. 11, 2016); *see also Slezak v. City of Palo Alto*, 2017 WL 2688224, at *5 (N.D. Cal. June 22, 2017) (finding the "likelihood of fraud or collusion [wa]s low . . . because the Settlement was reached through arm's-length negotiations, facilitated by an impartial mediator."). This presumption of

fairness ought to apply here because Class Counsel and Defendant's counsel are experienced in ERISA litigation, and each possesses a thorough understanding of the factual and legal issues involved in the case. *See Tadepalli v. Uber Techs., Inc.*, 2015 WL 9196054, at *9 (N.D. Cal. Dec. 17, 2015) (Settlements are entitled to a presumption of fairness when they are the result of arm's-length negotiations among experienced counsel.)

### 2.    The Settlement Recovery

Plaintiffs, with the assistance of their experts, have estimated realistic and supportable Plan losses of roughly $3,000,000. (McKay Decl., at ¶ 4.) Plaintiffs and Class Counsel submit, based on their experience, that the Settlement—which provides $1,700,000, or approximately 57% of estimated supportable losses—is well within and significantly exceeds the accepted range of recovery in class action settlements across the country and in this district. *See Linney v. Cellular Alaska Partnership,* 151 F.3d 1234, 1242 (9th Cir. 1998) (noting a monetary recovery may only amount to a "fraction" of a potential trial recovery and still be approved as fair and reasonable); *Fleming v. Impax Lab'ys Inc.*, 2021 WL 5447008, at *10 (N.D. Cal. 2021) (settlement recovery representing 12.5% of recoverable damages is "in a range consistent with the median settlement recovery in class actions"); *In re MyFord Touch Consumer Litig.*, 2019 WL 1411510, at *10 (N.D. Cal. 2019) (approving settlement providing for 5.7% of possible recovery); *Deaver v. Compass Bank*, 2015 WL 8526982, at *7 (N.D. Cal. 2015) (10.7% of total damages); *In re Lithium Ion Batteries Antitrust Litig.*, 2017 WL 1086331, at *4 (N.D. Cal. 2017) (overruling objections to settlement representing between 2.2% and 11.2% of possible damages).

### 3.    The Stage of Proceedings and Extent of Discovery Completed

"The extent of the discovery conducted to date and the stage of the litigation are both indicators of [Class Counsel's] familiarity with the case and of Plaintiffs having enough information to make informed decisions." *In re Omnivision Techs., Inc*., 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008). This factor also strongly supports final approval. Again, the parties litigated the case for nearly two years. They completed substantial fact discovery and engaged expert witnesses to assist in developing claims and defenses. The Settlement

was reached only after both sides clearly understood the facts, claims, and defenses in this action.

### 4.    The Experience and Views of Class Counsel

Class Counsel have extensive experience litigating ERISA breach of fiduciary duty claims. They are of the opinion that the Settlement is fair, reasonable, and adequate. (McKay Dec. ¶¶ 3-5.) "The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Omnivision*, 559 F. Supp. 2d at 1043. This presumption is especially warranted based on the opinion of "experienced plaintiffs' advocates and class action lawyers." *Walsh v. CorePower Yoga LLC*, 2017 WL 589199, at *10 (N.D. Cal. Feb. 14, 2017) (holding that experience of counsel favored settlement approval). Accordingly, the Court should find the Settlement is fair, reasonable, and adequate, and merits final approval.

### 5.    The Reaction of Class Members

There have been no objections from Class Members to the Settlement. The reaction of the Settlement Class to the Settlement strongly supports final approval too. *See Omnivision*, 559 F. Supp. 2d at 1043 (approving settlement where three of over 57,000 potential class members objected); *see also Churchill Village LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming settlement with 45 objections out of 90,000 notices sent).

### 6.    Presence of a Governmental Participant

American Legal served Notice of the Settlement in the form approved by the Court on the Attorney General of the United States, the Secretary of the Department of Labor, and the attorneys general of all states in which Class Members reside, as specified by 28 U.S.C. § 1715. None of the aforementioned government entities objected to the Settlement, appeared in this case, or voiced any concern about the Settlement. Thus, this factor also weighs in favor of granting final approval.

In sum, all of the factors courts consider when ruling on motions for final approval support granting final approval in this case.

### B.    The *Bluetooth* Factors Are Satisfied

A settlement agreement negotiated before the class has been certified requires a "higher level of scrutiny" to ensure it is free from "collusion or other conflicts of interest." *Roes, 1-2, v. SFBSC Mgmt, LLC*, 944 F.3d 1035, 1048 (9th Cir. 2019). Often referred to as the "*Bluetooth*" factors, the Court must determine whether the Settlement was a result of good faith, arms-length negotiations lacking any explicit collusion or "subtle signs" of collusion. *In re Bluetooth*, 654 F.3d 935, 947 (9th Cir. 2011). These subtle signs of collusion include:

> (1) when counsel receive a disproportionate distribution of the settlement; (2) when the parties negotiate a clear sailing arrangement (*i.e.*, an arrangement where defendant will not object to a certain fee request by class counsel); and (3) when the parties create a reverter that returns unclaimed [funds] to the defendant.

*Id.* at 1049 (quotations and citations omitted).

None of these warning signs are present here. First, the Settlement provides that Class Counsel shall not seek more than one-third of the Gross Settlement to ensure Class Counsel do not seek a disproportionate share of the Gross Settlement. (*See* Settlement §§ 1.4 and 6.1, ECF No. 80-1.) Second, the Settlement does not include a clear sailing agreement. Although Defendant has not objected to Plaintiffs' requested fee award, nothing in the Settlement prevents Defendant from doing so. Finally, the $1,700,000 recovery is non-reversionary – that is, none of the money will ever revert back to Defendant.

## IV.    PLAINTIFFS' REQUEST FOR ATTORNEYS' FEES, EXPENSES, AND CASE CONTRIBUTION AWARDS IS FAIR, REASONABLE, AND APPROPRIATE

It is well established that "a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977).

Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method. *In re Mercury Interactive Corp.*, 618 F.3d 988, 992 (9th Cir.2010)). In the Ninth Circuit, the percentage method is the prevailing method by which district courts assess and award fees from a common fund in class action litigation. *See Omnivision*, 559 F. Supp. 2d at 1046. Regardless of the method used, the Ninth Circuit requires "only that fee awards in common fund cases be reasonable under the circumstances." *State of Fla. v. Dunne*, 915 F.2d 542, 545 (9th Cir. 1990). Courts determining fee awards using the percentage method generally look to the following factors:

(1) the results achieved;

(2) the risk of litigation;

(3) the skill required and the quality of work;

(4) the contingent nature of the fee and the financial burden carried by the plaintiffs [and class counsel]; and

(5) awards made in similar cases.

*See Plaintiff v. Vision Airlines, Inc.*, No. 2:09-cv-00117-RLH-NJK, 2014 WL 354643 (D. Nev. July 17, 2014).[1]

1.    The Results Achieved

The overall result and benefit to the class from the litigation is often referred to as the most critical factor in granting a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 436, 103 S. Ct. 1933, 76 L.Ed.2d 40 (1983) ("the most critical factor is the degree of success obtained"); *In re Heritage Bond Litig.*, No. 02-ML-1475-DT, 2005 WL 1594403, at *19 (C.D. Cal. June 10, 2005) (a "significant factor"); *Deaver v. Compass Bank*, No. 13-222, 2015 WL 8526982, at *11 (N.D. Cal. Dec. 11, 2015) ("the most critical factor").

---

[1] Local Rule 54-14 also enumerates factors courts in this District should consider when ruling on motions for attorney fees. All of the Local Rule 54-14 factors are discussed herein and all weigh in favor of granting the Motion as well.

11

Plaintiffs have recovered $1,700,000 or approximately 57% of the estimated supportable Plan losses. (McKay Decl., at ¶ 4.) The recovery Class Counsel obtained here, as a percentage of recovery, is greater than recoveries in other cases where attorney fees of one-third of the common fund were awarded. *See Emmons v. Quest Diagnostics Clinical Laboratories, Inc.*, 2017 WL 749018, at \*5 ($2.35 million settlement; 27.6% of claimed damages of $8.5 million); *Cheng Jiangchen v. Rentech, Inc.*, No. 17-1490-GW, 2019 WL 5173771, at \*7 (C.D. Cal. Oct. 10, 2019) ($2.05 million settlement; 10% of maximum damages of $20 million); *Deaver*, 2015 WL 8526982, at \*7 ($500,000 settlement; 14.2% of $3,512,000 in "potential liability"); *Marshall v. Northrop Grumman Corp.*, No. 16-CV-6794 AB (JCX), 2020 WL 5668935, at \*8 (C.D. Cal. Sept. 18, 2020), appeal dismissed, No. 20-56096, 2021 WL 1546069 (9th Cir. Feb. 16, 2021) (concluding recovery of 29% of losses justifies an attorney's fee award of one-third the settlement fund).

Non-monetary relief is an additional factor that weighs in favor of awarding the requested fees. *Wakefield v. Wells Fargo & Co.*, 3:13-CV-05053, 2015 WL 3430240, at \*5 (N.D. Cal. May 28, 2015) ("When determining the value of a settlement, courts consider both the monetary and non-monetary benefits.") Such non-monetary relief also supports an upward departure from the 25% benchmark. *Spann v. J.C. Penney Corp.*, 211 F.Supp.3d 1244, 1263 (C.D. Cal. 2016) (finding that non-monetary relief weighed in favor of upward adjustment from the benchmark). The non-monetary relief obtained is substantial. It will add millions of dollars to the Plan and Plan participants' retirement savings going forward. If the Court were to factor in the non-monetary relief obtained here into the fee request, it would result in a fee request that is far below the 25% benchmark.

The exemplary result achieved on behalf of the Plan supports the requested fee award of one-third of the cash recovery. *See*, *e.g.*, *Marshall*, 2020 WL 5668935, at \*8 (C.D. Cal. Sept. 18, 2020) (concluding recovery of 29% of losses justifies an attorney's fee award of one-third the settlement fund.)

2.    The Risk of Litigation

"The risk that further litigation might result in Plaintiffs not recovering at all, particularly a case involving complicated legal issues, is a significant factor in the award of fees." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002). This factor weighs heavily in favor of the requested fee.

The outcome in *Lucas v. MGM Resorts Int'l,* Case No. 2:20-20-cv-01750-JAD-NJK, is instructive. As the Court is aware, plaintiff in *Lucas* made somewhat similar ERISA breach of fiduciary duty claims to Plaintiffs here. The defendant in *Lucas* was represented by the same counsel as Defendant here. The plaintiff in *Lucas* litigated that case for nearly four years and recovered nothing. Plaintiffs here avoided the very real litigation risks that the plaintiff in *Lucas* could not. *Lucas* illustrates that the Settlement here provides an excellent recovery for the Plan and alleviates the risks associated with further litigation. *See McGrath v. Wyndham Resort Dev. Corp.*, No. 15-cv-1631 JM (KSC), 2018 WL 637858, at *8 (S.D. Cal. Jan. 30, 2018) (finding request of one-third of $7.25 million common fund reasonable where continued litigation posed "significant risk of no recovery").

*Lucas* did not make it to trial. A trial would have presented additional risks. Defense verdicts entered by courts after trial in other complex ERISA fiduciary breach class actions further illustrate litigation risks. *See*, *e.g.*, *Romo v. Principal Life Ins. Co.*, Opinion and Order on Merits Following Trial (D. Iowa April 8, 2021) (ECF No. 219-2) (entering a defense verdict in an ERISA fiduciary breach class action following a six-day trial); *Wildman v. Am. Cent. Servs., LLC*, 362 F. Supp. 3d 685 (W.D. Mo. 2019) (defense verdict in ERISA fiduciary breach class action following eleven-day trial); *Fish v. Greatbanc Tr. Co.*, No. 09 C 1668, 2016 WL 5923448, at *1, *68 (N.D. Ill. Sept. 1, 2016) (defense verdict in ERISA breach of fiduciary duty case following 34-day trial). While Class Counsel do not shy away from trial, they fully appreciate the risks involved associated with trials.

Even if Plaintiffs had prevailed at trial, Defendant would likely have appealed any judgment in Plaintiffs' favor. There have been high-profile class actions where plaintiffs

prevailed at trial and subsequently had such verdicts reversed on appeal. For example, following a non-jury trial, the Ninth Circuit affirmed in part and reversed in part, a judgment rendered in favor of a certified class, vacated a $203 million restitution award, and remanded the case for further proceedings. *Gutierrez v Wells Fargo Bank, N.A.*, 704 F.3d 712 (9th Cir. 2012); *see also Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1449 (11th Cir. 1997) (reversing $81 million jury verdict and dismissing case with prejudice in securities action); *Anixter v. Home–Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning plaintiffs' verdict obtained after two decades of litigation).

As Class Counsel are well aware, even when a successful judgment survives appeal, it can take significant time to collect the judgment. Thus, the risks of litigation weigh in favor of the requested fee award.

### 3. The Skill Required and the Quality of Representation Weigh in Favor of the Fee Request

ERISA claims such as Plaintiffs' here deal with a complex area of the law that necessitates fierce litigation on highly complicated and financially sophisticated topics. *See Toumajian v. Frailey*, 135 F.3d 648, 650 (9th Cir. 1998) ("Once again the mysteries of the Employee Retirement Income Security Act of 1974 ("ERISA") – a statute intended to provide a system of uniformity and simplicity in the complex regulatory field of employee benefits – provide added complexity in this action.").

ERISA class actions are "complex" and require counsel with "specialized skills." *Karpik v. Huntington Bancshares Inc.*, No. 2:17-CV-1153, 2021 WL 757123, at *9 (S.D. Ohio Feb. 18,2021). "Very few plaintiffs' firms possess the skill set or requisite knowledge base to litigate . . . class-wide, statutorily-based claims for pension benefits." *Savani v. URS Prof. Sols. LLC*, 121 F. Supp. 3d 564, 573 (D.S.C. 2015). In addition to legal expertise, counsel in ERISA cases must possess "expertise regarding industry practices." *Kruger v. Novant Health*, No. 1:14CV208, 2016 WL 6769066, at *3 (M.D.N.C. Sept. 29, 2016).

Class Counsel are among the small ERISA plaintiffs' bar with the unique and extensive experience and expertise required to litigate cases like this one and the willingness

to litigate such cases on behalf of Plaintiffs. This case involved precisely the issues that make litigation of this sort notoriously complex. Throughout the pendency of the case, Class Counsel have leveraged their experience and resources to vigorously pursue recovery on behalf of the Plan and protect the interests of the Plan and all Class Members, including by comprehensively investigating the claims forming the basis of the action, filing detailed pleadings, briefing several motions (prevailing on all decided motions), engaging in the discovery process, retaining multiple industry experts to develop theories and support Plaintiffs' allegations (even before the Complaint was filed), and preparing for trial. (*Id.*) Tens of thousands of pages of documents were investigated and reviewed during the discovery process. (*Id.*) The representation of the Class was of the highest quality. In addition, Defendant was represented by some of the most formidable and qualified ERISA practitioners in the country. Class Counsel was still able to secure a $1,700,000 Settlement and the non-monetary relief discussed above. Accordingly, achieving a favorable Settlement against such well-represented adversaries is a testament to the skill and quality of Class Counsel's representation of the Plan and Class Members. The specialized skill brought to bear by Class Counsel on this complex case thus weighs in favor of the upward departure from the Ninth Circuit benchmark and supports the reasonableness of Class Counsel's fee request.

4.     The Contingent Nature of the Fee and the Financial Burden

Courts within the Ninth Circuit recognize, "[w]ith respect to the contingent nature of litigation . . . courts tend to find above-market-value fee awards more appropriate in this context given the need to encourage counsel to take on contingency-fee cases for plaintiffs who otherwise could not afford to pay hourly fees." *Deaver*, 2015 WL 8526982, at *11. "Moreover, when counsel takes cases on a contingency fee basis, and litigation is protracted, the risk of non-payment after years of litigation justifies a significant fee award." *Id.*; *see Philips v. Munchery Inc.*, No. 19-CV-00469, 2021 WL 326924, at *9 (N.D. Cal. Feb. 1, 2021) (holding that "as Class Counsel took this matter on a contingency basis, they assumed considerable risk litigating the matter for the last two years"). "If this 'bonus'

15

methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994).

Class Counsel prosecuted the action on a contingent basis and advanced all associated costs with no guaranty of compensation in the event the litigation did not result in a recovery. (McKay Decl. ¶ 18.) Class Counsel have devoted in excess of 1,130 hours over more than two years to this litigation. (*Id.*) They have yet to receive any compensation for the efforts expended in this case. Additionally, Class Counsel advanced $20,389.49 of expenses in the interest of providing effective representation to the Settlement Class over two years. (*Id.*) Class Counsel's risk of nonpayment in light of these efforts merits the requested fee award too. *See In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d at 1303 (9th Cir. 1994) (finding abuse of discretion for failing to award class counsel a lodestar multiplier); s*ee also In re Quantum Health Res., Inc. Sec. Litig.*, 962 F. Supp. 1254, 1257 (C.D. Cal. 1997) ("Because payment is contingent upon receiving a favorable result for the class, an attorney should be compensated both for services rendered and for the risk of loss or nonpayment assumed by accepting and prosecuting the case.").

### 5.   Awards in Similar Cases Weigh in Favor of the Fee Request

A one-third fee "is also on par with settlements in other complex ERISA class actions" that have settled within the Ninth Circuit. *Foster v. Adams & Assocs., Inc.*, No. 18-CV-02723-JSC, 2022 WL 425559, at *10 (N.D. Cal. Feb. 11, 2022); *In re LinkedIn ERISA Litig.*, No. 20-cv-05704-EJD, 2023 WL 8631678 *10 (N.D. Cal. Dec. 13, 2023) (quoting *Foster* and observing awards in similar complex ERISA actions support one-third fee award); *Marshall* 2020 WL 5668935, at *8 (C.D. Cal. Sept. 18, 2020) (awarding one-third fee in ERISA action); *Schwartz v. Cook*, No. 15-CV-03347-BLF, 2017 WL 2834115, at *5 (N.D. Cal. June 30, 2017) (awarding one third fee in ERISA action); *Waldbuesser v. Northrop Grumman Corp.,* No. CV 06-6213-AB (JCX), 2017 WL 9614818, at *5 (C.D.

Cal. Oct. 24, 2017) (same); *Waldbuesser v. Northrop Grumman Corp.*, No. CV 06-6213-AB (JCX), 2017 WL 9614818, at *5 (C.D. Cal. Oct. 24, 2017) (same).

      6.    Lodestar Cross-Check Weighs in Favor of the Fee Request

      As a final check on the reasonableness of the requested fees, courts often compare the fee counsel seeks as a percentage with what their hourly bills would amount to under the lodestar analysis. While the Court need not engage in a full-blown lodestar analysis when the primary basis remains the percentage method, the calculation is meant to provide a "useful perspective on the reasonableness of a given percentage award." *Vizcaino*, 290 F.3d at 1050. Here, the lodestar cross-check confirms that Class Counsel's fee request is reasonable. The lodestar fees are $631,405.00 as summarized in the chart below.

| Attorneys | Hours | Hourly Rate | Fees |
|---|---|---|---|
| Michael McKay<br>21 years practicing law | 344.2 | $700.00 | $240,940.00 |
| Luis A. Cabassa<br>29 years practicing law | 102.3 | $700.00 | $71,610.00 |
| Amanda Heystek<br>24 years practicing law | 82.6 | $650.00 | $53,690.00 |
| Brandon J. Hill<br>17 years practicing law | 215.6 | $650.00 | $140,140.00 |
| Eric Lechtzin<br>33 years practicing law | 47.3 | $1,045 | $49,428.50 |
| Shoshana Savett<br>22 years practicing law | 32.4 | $850 | $27,540.00 |
| Michael Kind<br>10 years practicing law | 7.5 | $695.00 | $5,212.50 |
| Matthew Tripp-Cox<br>2 years practicing law | 3.4 | $385.00 | $1,309.00 |
| **Total:** | **853.3** | | **$589,870.00** |
| **Paralegals** | **Hours** | **Hourly Rate** | **Fees** |
| George Venieris<br>6 years as paralegal | 163.6 | $150.00 | $24,540.00 |
| Kelly Moysh<br>8 years as paralegal | 82.0 | $150.00 | $12,300.00 |
| Chad McBride<br>4 years as paralegal | 16.5 | $150.00 | $2,475.00 |

| Amy Ketelsen 15 years as paralegal | 14.8 | $150.00 | $2,220.00 |
| **Total:** | **276.9** | | **$41,535.00** |

Complex ERISA class action litigation, such as this one, involves a national market because of the small number of plaintiff's firms with the necessary expertise who are willing take the risk and devote the resources to litigate complex claims. *Marshall*, 2020 WL 5668935, at *6 (quoting *Mogck v. Unum Life Ins. Co. of Am.*, 289 F. Supp. 2d 1181, 1191 (S.D. Cal. 2003)). The "relevant hourly rate for Class Counsel's work" is thus "the 'nationwide market rate.'" *Id. Boxell v. Plan for Grp. Ins. of Verizon Commc'ns, Inc.*, 2015 WL 4464147, at *9 (N.D. Ind. July 21, 2015) ("ERISA is a specialized field with a limited number of attorneys who specialize in representing plaintiffs seeking disability benefits, and … there is a national market for the services of those attorneys.").

Here, the hourly rates charged by Class Counsel are based on each professional's position, experience, and expertise. These rates are in line with, if not lower, than rates approved by comparably skilled and specialized lawyers in similar litigation. In another ERISA class action, a court in this Circuit in 2020 approved rates of up to $1,060 per hour for attorneys with over 25 years of experience, $900 per hour for attorneys with 15-24 years of experience and up to $650 per hour for attorneys with 5-14 years of experience in its lodestar calculation. *See Marshall*, 2020 WL 5668935 at *7. Other courts in this Circuit have approved similar rates in complex class actions like this one. *See Rainbow Bus. Sols. v. MBF Leasing LLC*, No. 10-CV-01993, 2017 WL 6017844, at *1 (N.D. Cal. Dec. 5, 2017) (finding rates between $275 to $950 per hour for class counsel to be reasonable); *Dickey v. Adv. Micro Devices, Inc.*, No. 15-CV-04922, 2020 WL 870928, at *8 (N.D. Cal. Feb. 21, 2020) (finding class counsel's hourly rates up to $1,000 per hour for partners to be reasonable); *Hefler v. Wells Fargo & Co.*, No. 16-CV-05479, 2018 WL 6619983, at *14 (N.D. Cal. Dec. 18, 2018) (finding rates from $650 to $1,250 for partners or senior counsel, $400 to $650 for associates, and $245 to $ 350 for paralegals to be reasonable); *Nitsch v. DreamWorks Animation SKG Inc.*, No. 14-CV-04062, 2017 WL 2423161, at *9 (N.D. Cal.

18

June 5, 2017) (finding class counsel's hourly rates varying between $275 and $1,200 per hour based on experience to be reasonable). These cases demonstrate that Class Counsel's rates are lower than other attorneys of similar experience and skill handling complex litigation, including complex ERISA class action litigation.

A reasonable number of hours expended by a party's counsel "is calculated by considering whether, in light of the circumstances, the time could reasonably have been billed to a private client." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008). Counsel are expected to "make a good faith effort to exclude . . . hours that are excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). For a district court "to reduce the number of hours submitted," for purposes of the lodestar calculation, "'it must appear that the time claimed is obviously and convincingly excessive under the circumstances.'" *Full Tilt Boogie LLC v. Kep Fortune LLC*, No. 219CV09090, 2021 WL 4527735, at *3 (C.D. Cal. Sept. 14, 2021) (citing *Blackwell v. Foley*, 724 F.Supp.2d 1068, 1081 (N.D. Cal. 2010)). In assessing the reasonableness of the hours expended, courts have taken into account the fact that the amount of time billed by a plaintiff's counsel "is in large part a result of [a defendant's] aggressive defense strategy." *Wren v. RGIS Inventory Specialists*, No. 06 CV 5778, 2011 WL 1230826, at *26 (N.D. Cal. Apr. 1, 2011).

Class Counsel performed significant work to litigate this case vigorously and efficiently. (McKay Decl. ¶¶ 18-20.) Class Counsel assigned work to junior attorneys and paralegals with lower hourly rates as appropriate. (*Id.*) Class Counsel coordinated their work to avoid unnecessary duplication of effort. (*Id.*) Prior to filing this Motion, each firm reviewed time entries and, just as counsel would prior to sending bills to paying clients, removed time entries for duplicative or unnecessary work that ordinarily would not be billed to a client. (*Id.*) The lodestar figure submitted by Class Counsel in support of their request for fees reflects these adjustments.

Calculations under the lodestar method, taking into consideration any positive multipliers, confirm that a fee award of one-third is reasonable. Indeed, Class Counsel have spent more than 1,300 hours prosecuting this case (excluding the additional time anticipated to be spent on administering the Settlement and addressing any inquiries by members of the Settlement Class following final approval). (McKay Decl. at ¶ 17.) Even before any additional post-approval time is considered, an award of one-third of the Settlement ($566,666) would represent less than Class Counsel's lodestar ($631,405.00). In complex financial litigation such as this, courts have often approved lodestar multipliers ranging between 1 and 4. *See In re Chiron Corp. Secs. Litig.*, 2007 WL 4249902, at *17–18 (N.D. Cal. Nov. 30, 2007) (surveying fee awards). Here, Class Counsel's lodestar exceeds the requested fee award. Thus, under all of the circumstances, a lodestar cross-check confirms the reasonableness of the fee request.

7.    The Court Should Award the Requested Reasonable Expenses to Plaintiffs

Federal Rule of Civil Procedure 23 permits a court to award costs that are authorized by law or by the parties' agreement. Fed. R. Civ. P. 23(h). Under the "common fund doctrine," "a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *In re Apple Inc., Device Performance Litig.*, 50 F.4th 769, 785 (9th Cir. 2022). The fundamental purpose of the doctrine "is to spread the burden of a party's litigation expenses among those who are benefitted." *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989). In sum, Class Counsel are entitled to reimbursement of the out-of-pocket costs they reasonably incurred investigating and prosecuting this case. *See In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996) (citing *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 391-92 (1970)).

To date, Class Counsel have advanced $20,389.49 in prosecuting this case and are entitled to reimbursement of this amount. (McKay Decl. at ¶¶ 18-21.) This total amount is

comprised of ordinary litigation expenses, including court filing fees, process servers, consulting experts' fees, postage, travel, and eDiscovery vendors. (*Id*.) Class Counsel kept expenses at a reasonable level and incurred only expenses that were necessary for the prosecution of this action. The following chart itemizes the expenses incurred by Class Counsel in the action.

| Description | Total |
|---|---|
| Court/Filing Fees | $1,994.10 |
| Data Hosting | $3,011.48 |
| Experts/Consulting | $9,450.00 |
| Online Research | $2,428.01 |
| Other (postage) | $21.00 |
| Travel | $3,484.90 |
| **Grand Total:** | **$20,389.49** |

Class counsel have submitted declarations attesting to the time and expenses for each of their respective firms. (McKay Decl. ¶ 19.)

8.    The Court Should Award the Requested Case Contribution Awards

Case contribution "awards that are intended to compensate class Representatives for work undertaken on behalf of a class 'are fairly typical in class action cases.'" *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015) (citation omitted). Such awards are "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009).

Plaintiffs have actively participated in the litigation and assisted Class Counsel in all facets of the litigation. (McKay Decl. ¶ 22.) Additionally, Plaintiffs' names are now publicly available as plaintiffs in a lawsuit against their former employer, they will now have to live with the potential stigma of having sued a former employer. *See*, *e.g.*, *Guippone v. BH S&B Holdings, LLC*, No. 09-CV-01029-CM, 2011 WL 5148650, at *7 (S.D.N.Y. Oct. 28, 2011) ("Today, the fact that a plaintiff has filed a federal lawsuit is searchable on

the internet and may become known to prospective employers when evaluating the person."); *Connolly v. Weight Watchers N. Am. Inc.*, No. 14-CV-01983-TEH, 2014 WL 3611143, at *4 (N.D. Cal. July 21, 2014) (recognizing that plaintiffs "assumed the risk of being stigmatized or disfavored by their current or potential future employers by suing their employer[.]").

Consistent with awards regularly granted under similar circumstances, Plaintiffs should be compensated for their work done in support of the litigation and for assisting Class Counsel in achieving a strong settlement on behalf of the Class, as well as the reputational and other risks they undertook in bringing this Action. *See Johnson*, 2018 WL 2183253, at *8. Accordingly, Plaintiffs request that the Court approve a contribution award in the amount of $10,000 to each Plaintiff.

## VI. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their Motion for Final Approval of the Settlement, Attorneys' Fees, Expenses, and Class Contribution Awards.[2]

Dated: March 25, 2025                Respectfully submitted,

                                     /s/ *Michael C. McKay*
                                     Michael C. McKay, Esq.
                                     **MCKAY LAW, LLC**
                                     5635 N. Scottsdale Road, Suite 117
                                     Scottsdale, Arizona 85250
                                     Telephone: 480-681-7000
                                     Email: mmckay@mckaylaw.us

                                     Brandon J. Hill, Esq.
                                     Luis A. Cabassa, Esq.
                                     Amanda E. Heystek, Esq.
                                     **WENZEL FENTON CABASSA, P.A.**
                                     1110 N. Florida Avenue, Suite 300
                                     Tampa, Florida 33602

---

[2] If helpful to the Court, Plaintiffs would be pleased to provide a Word version of the proposed Final Approval Order, filed as an exhibit to the Settlement Agreement.

Telephone: 813-224-0431
Email: bhill@wfclaw.com
Email: lcabassa@wfclaw.com
Email: aheystek@wfclaw.com

Eric Lechtzin, Esq.
**EDELSON LECHTZIN LLP**
411 S. State Street, Suite N-300
Newtown, Pennsylvania 18940
Telephone: 215-867-2399
elechtzin@edelson-law.com
*Class Counsel*

Michael Kind, Esq.
**KIND LAW**
8860 S. Maryland Parkway, Suite 106
Las Vegas, Nevada 89123
Telephone 702-337-2322
Email: mk@kindlaw.com
*Local Counsel*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this 25th day of March, 2025, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registered users.

/s/ *Michael C. McKay*
Michael C. McKay